PER CURIAM.
This is an appeal from an order of the trial court granting injunctive relief and directing Jane Carroll, Supervisor of Elections of Broward County (“Supervisor”), to place Joy Mack’s name on the September 5, 2000 ballot for election to the office of Broward County Commissioner in a newly-created electoral district. Because Mack lacked the statutory requirements allowing her name to be placed on the ballot without payment of a filing fee, we reverse.[1]
On March 14, 2000, the electors of Bro-ward County approved an amendment to the charter enlarging the Broward County Commission from seven to nine commissioners, each elected from a separate and distinct district. After approval of the *1217 amendment, the County Commission undertook the task of establishing the exact boundaries of the newly-created districts. Until the Commission completed this task, the boundaries and number of voters were unknown. On June 27, 2000, the Broward County Commission adopted an ordinance determining the boundary lines for all nine districts.
Meanwhile, Mack, a Broward County resident, sought to qualify for nomination using the “Alternative Method for Qualifying” under Florida Statute section 99.095 (1999)(“Statutory Alternative Method”). Under this method, no filing fee is paid by a candidate; instead, the candidate must obtain a certain number of signatures on a petition, i.e., one percent of the number of registered voters within the district as shown by the compilation of the Department of State for the last preceding general election. See § 99.095(3), Fla. Stat. (1999). Certain timetables must be observed for qualifying by petition.[2] With the election set for September 5, 2000, the parties all agree that the last day for Mack to file a petition with signatures using the alternative method was June 26, 2000.[3] As of that date, Mack still did not know the boundaries of the district in which she would be seeking election. Nevertheless, Mack collected 852 valid signatures; as it turned out, only 594 of these signatures were from registered voters within the boundaries of newly-created District 8, the district in which Mack resided. The total number of qualified electors in District 8 was 78,809; therefore, Mack needed 788 signatures.
Earlier, in April of 2000, the Supervisor sought to remedy the dilemma caused by the fact that the period for collecting signatures under the Statutory Alternative Method would expire prior to the establishment of the districts. The Supervisor sought guidance from the Florida Department of State, Division of Elections. The Division of Elections recommended the Supervisor rely upon the procedures set forth in Florida Statute section 99.09651, which governs the signature. requirements for congressional or state Senate or House of Representative offices, during years of statewide reapportionment. That statute allows the total population of the state to be divided by the number of districts within the state for the particular office, creating an average population per district. The average population per district is then used to determine the number of signatures necessary to qualify by petition. Under this method, signatures may be obtained statewide without regard to any district boundaries.
The Supervisor followed the advice of the State Division of Elections and developed a plan (“Supervisor’s Alternative Method”) whereby the total number of registered voters in Broward County was divided by the number of districts, hence determining the average number of voters per district. Taking one percent of this number then yielded the minimum number of required signatures — 908—that a person seeking election for any one of the nine districts in Broward County would need to obtain. These signatures could be obtained from voters residing anywhere in Broward County. Candidates were informed of the Supervisor’s plan sometime in April or May of 2000. The Supervisor claims her method provided notice and certainty to candidates in the midst of an unpredictable environment.
By application of the statute, Mack needed at least 788 names from within the district to qualify by the Statutory Alternative Method; whereas, under the Supervisor’s Alternative Method, Mack needed at least 908 names from anywhere in Bro-ward County. Mack met neither requirement. After the Supervisor advised Mack that she did not qualify to run for office under the Statutory Alternative Method, Mack filed an emergency petition for in-junctive relief in the circuit court. Mack argued to the trial court that she should be *1218 allowed to use names from throughout Broward County to reach the required one percent total. Among other things, Mack argued that the Supervisor should be es-topped from requiring her to obtain signatures only from voters in District 8 since the Supervisor’s Alternative Method permitted a candidate to collect signatures county-wide. At the conclusion of the hearing for injunctive relief, the trial court agreed with Mack and ruled that since the total number of signatures on Mack’s petition exceeded the number equal to one percent of the actual number of registered voters in District 8, regardless of where the signatures were obtained, he would grant the petition and order the Supervisor to place Mack’s name on the ballot.
We find that the trial court abused its discretion and erred as a matter of law in ordering the Supervisor to place Mack’s name on the ballot when Mack did not meet the statutory criteria. Significantly, the statute states in part:
Only signatures of electors who are registered in the county, district, or other geographical entity represented by the office sought shall be counted toward obtaining the minimum number of signatures prescribed in this subsection.... A candidate for any federal, state, county or district office to be elected on less than a statewide basis shall obtain the signatures of a number of qualified electors of the district, county, or other geographical entity equal to at least 1 percent of the total number of registered voters of the district, county, or other geographical entity represented by the office sought, as shown by the compilation by the Department of State for the last preceding general election.
§ 99.095(3), Fla. Stat.
Mack urges that the signatures she collected from throughout Broward County should be utilized to reach the required one percent of the total number of qualified electors in District 8. While we are sympathetic to the plight of Mack and other similarly situated candidates, when utilizing the Statutory Alternative Method, we find significant and important the requirement that the signatures on the petition come from qualified electors from within the district for which election is sought. Under the Statutory Alternative Method, there are no exceptions, and even if substantial compliance was enough, Mack’s collection of only 594 signatures from within the district when she needed 788 would hardly be sufficient.
As for Mack’s estoppel argument, she fails to take into account that the Supervisor’s acceptance of county-wide signatures depends upon acceptance of the overall methodology of calculating the average number of registered voters within each district of the county by dividing the number of districts into the total population of the county, premised on section 99.09651. Without passing judgment on the validity of the Supervisor’s Alternative Method,[4] Mack’s 852 signatures from throughout Broward County still fell short of the required mark under that method. Again, we conclude Mack has simply not shown that she has met the statutory requirements under section 99.095(3), which would entitle her to require the Supervisor to place her name on the ballot for District 8 Commissioner in Broward County without the payment of a filing fee.
We are troubled by the fact that candidates, hoping to qualify for election without paying the requisite filing fee and having no way of knowing the district boundaries in advance, were handicapped in complying with the literal requirements of section 99.095(3). Nevertheless, we believe that this is a matter for the legislature to address when reviewing the *1219 statutory scheme, as they did under the reapportionment statute, section 99.09651.
Accordingly, the order on review granting injunctive relief to Joy Mack and ordering Jane Carroll as Supervisor of Elections for Broward County to place Mack’s name on the September 5, 2000 ballot for County Commissioner in District 8 is hereby QUASHED.
STEVENSON, GROSS and TAYLOR, JJ., concur.

. This court entered a call-out order in this case on July 28, 2000, with this opinion to follow. We granted the Supervisor’s motion to expedite because in order to meet the deadline lor mailing absentee ballots, the ballots needed to be placed in final form by July 28, 2000. See § 101.62, Fla. Stat. (1999).

. See §§ 99.061, 99.095, Fla. Stat. (1999).

. The final day for qualifying for the office when paying the filing fee was July 21, 2000.

. There is at least some authority to support the proposition that the supervisor's plan would be entitled to a presumption of correctness and should be upheld if rational and not clearly outside legal requirements. See Krivanek v. Take Back Tampa Political Comm., 625 So.2d 840, 844-45 (Fla.1993)(citing Boardman v. Esteva, 323 So.2d 259 (Fla.1975)). Again, we need not reach the issue of the propriety of the Supervisor's plan since Mack did not qualify under it anyway.